## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| **GERARD A. CRUZ,** | ) | Case No. DM0554-14 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DECISION & ORDER** |
| | ) | |
| **CARMELITA C. CRUZ,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III initially on March 30, 2018 on a submission by Carmelita Cruz ("Ms. Cruz") of a Motion for Order to Show Cause and Contempt, Motion to Enforce Decrees, and Motion for Writ of Execution and Judgment Debtor Examination. Gerard Cruz filed an opposing Second Motion for Order to Show Cause and Contempt. Gerard Cruz represented by Attorney James Maher, and Carmelita Cruz is represented by Attorney Joaquin Arriola, Jr. Having heard the arguments and testimony of the parties, and considered the applicable law, the Court now issues its Decision and Order.

### BACKGROUND

The action initially arose from a divorce complaint filed on September 25, 2014. (Compl. for Dissolution of Marriage, Sep. 25, 2014). The parties eventually settled their divorce

and appeared before the Court on September 14, 2015 announcing the terms of an agreement regarding the distribution of the community assets, community debts and obligations, and spousal support. Thereafter, the parties executed a Stipulated Interlocutory Decree for Divorce ("Interlocutory Decree"), which was subsequently approved by the Court on November 24, 2015. (Stipulated Interlocutory Decree for Divorce ("Interlocutory Decree"), Nov. 24, 2015). The Interlocutory Decree, which memorializes the terms of the settlement reached by the parties, granted a divorce on grounds of adultery. *Id.* A Final Judgment and Decree for Divorce was issued the same day, incorporating the Interlocutory Decree. (Final Judgment and Decree for Divorce, Nov. 24, 2015).

The Interlocutory Decree is comprised of three sections: community property, community debts and obligations, and spousal support. (Interlocutory Decree at 2-4). Pursuant to the first section of the Interlocutory Decree, the parties agreed to sell the marital home. *Id.* at 3. The parties also agreed that Ms. Cruz would keep, as her separate property, the land she had inherited from her family: *Lot 3245-NEW-REM-1-5*, Chalan Pago. *Id.* at 2 (Section I(B)(i)).

In accordance with the section of the Interlocutory Decree concerning community debts and obligations, Plaintiff agreed to assume certain debts and obligations, including a "Personal Finance Corporation (PFC) personal loan secured by Lot No. 3245-New-REM-1-5, Municipality of Chalan Pago, Guam in the amount of $1,180 per month" ("2012 PFC Loan"). *Id.* Mr. Cruz also agreed to pay various debts held in Ms. Cruz's name. *Id.* (Section II(A)(3-5)).

Due to disagreements as to the list price for the marital home, the Court intervened and ordered that the parties "list the marital home for sale at $574,000.00, or at any other higher price mutually agreed to by the parties." (Dec. & Order at 7, Mar. 15, 2017). A few months later, Mr. Cruz filed his first Motion for Order to Show Cause and Contempt and Motion to Enforce Decree, which concerned a dispute with respect to the listing of the marital home for sale. (Plaintiff's Mot. Show Cause and Mot. Enforce Decree, Jun. 26, 2017). The Court denied the Motion for Order to Show Cause and Contempt and granted the Motion to Enforce Decree.

(Dec. & Order at 5-6, Jan. 22, 2018). The Court further ordered that Ms. Cruz sign the listing agreement for the sale of the marital home, provided that Mr. Cruz is able to negotiate a certain commission rate. *Id.* In August 2017, a Money Judgment in the amount of $19,826.75 was issued against Mr. Cruz for his failure to pay the various loans in Ms. Cruz's name he had agreed to assume pursuant to the Interlocutory Decree. (Money Judgment, Aug. 23, 2017).

Following the decision concerning the listing of the marital home, the parties filed dueling order to show cause ("OSC") and contempt motions. On January 29, 2018, Ms. Cruz filed a Motion for Order to Show Cause & Contempt; Motion to Enforce Decrees; Motion for Writ of Execution and Judgment Debtor Examination ("Ms. Cruz's OSC Motion"). Ms. Cruz's OSC Motion concerns Mr. Cruz's alleged failure to pay community debts as stated in the Interlocutory Decree, specifically, the 2012 PFC Loan secured by Mr. Cruz's property. Mr. Cruz filed a response to Ms. Cruz's OSC Motion, to which Ms. Cruz replied. (Plaintiff's response to Defendant's OSC Motion, Feb. 26, 2018); (Defendant's Reply Mem., Mar. 12, 2018). On March 8, 2018, Mr. Cruz filed his Second Motion for Order to Show Cause and Contempt ("Mr. Cruz's OSC Motion"), which Ms. Cruz replied to. (Plaintiff's Second Mot. Show Cause & Contempt, Mar. 08, 2018); (Opposition to Plaintiff's Mot. Contempt, Apr. 05, 2018). Mr. Cruz's OSC Motion concerns Defendant's alleged failure to sign the listing agreement for the sale of the marital home.

Hearings on the dueling OSC motions began on March 30, 2018. (Minute Entry, Mar. 30, 2018). In the interim of these proceedings, Ms. Cruz issued a Subpoena Duces Tecum to PFC for documents related to the 2012 PFC Loan. (Opposition to Plaintiff's Mot. Quash at Ex A, Apr. 20, 2018). Mr. Cruz filed a Motion to Quash Subpoena, which the Court granted. (Plaintiff's Mot. Quash Subpoena Mar. 28, 2018); (Dec. & Order, Aug. 20, 2018). Hearings on the OSC motions resumed in November 2018 and, after hearing the testimony and arguments of the parties, the Court took the matter under advisement. (Minute Entry, Nov. 13, 2018).

## DISCUSSION

**A. Ms. Cruz's Motions for Writ of Execution and Judgment Debtor Examination and Mr. Cruz's Motions for Order to Show Cause & Contempt are moot.**

As a preliminary matter, the Court finds that various motions filed by the parties in this action, have become moot during the course of litigation. It is well settled that moot actions are not justiciable actions; courts are generally restricted from adjudicating claims to which no actual controversy exists. *See e.g. Anderson v. North Carolina State Bd. of Elections*, 788 S.E. 2d 179 (2016); *See also Town House Dept. Stores, Inc. v. Ahn*, 2000 Guam 32 ¶ 9 ("Courts may not give opinions upon moot questions or abstract propositions"). Mootness can arise at any stage of litigation. *Ahn*, 2000 Guam 32 ¶ 9 (citing *Calderon v. Moore*, 518 U.S. 149, 150, 116 S. Ct. 2066, 2067, 135 L.Ed.2d 453 (1996)). A claim becomes moot when the issues are no longer live or the parties lack a legally cognizable interest in the outcome. *Id.* (citing *United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir.1994)).

Here, Ms. Cruz's Motions for Writ of Execution and Judgment Debtor Examination were predicated on Mr. Cruz's nonpayment of the Money Judgment entered against him. (Ms. Cruz's OSC Mot. at 7-8). Ms. Cruz asked this court to issue a writ of execution so she could attempt to collect on the money judgement requested a judgement debtor examination to assess Mr. Cruz's ability to pay. *Id.* Mr. Cruz's OSC motion concerned Ms. Cruz's failure to sign the sale agreement for the family home, which the court had previously ordered Ms. Cruz to sign. (Mr. Cruz's OSC Mot. at 1).

During the course of litigation on these issues, the parties reported that Mr. Cruz had paid the money judgement in full. (Court Recording at 10:10:10, Nov. 13, 2018) (Attorney Arriola confirming the money judgment had been paid and the issue moot). Likewise, the parties also informed the Court that Ms. Cruz had signed the sale agreement for the marital

home. *Id.* at 10:44:25. As such, the Court is no longer able to provide the relief Ms. Cruz seeks, and the deficient performance Mr. Cruz complains about has been cured. Therefore, the Motions for Writ of Execution and Judgment Debtor Examination and Mr. Cruz's OSC Motion no longer concern sufficiently justiciable controversies, and the Court will dismiss these motions as moot.

**B. Mr. Cruz is not in willful violation of the court's order.**

In her OSC Motion Ms. Cruz contends that Mr. Cruz should be held in contempt for allowing the 2012 PFC Loan to go into default, resulting in the foreclosure upon Ms. Cruz's property which secured the loan. (Ms. Cruz's OSC Mot. at 4). She request this court enforce the Interlocutory Decree, and order Mr. Cruz to indemnify Ms. Cruz for the foreclosure and loss of property and award attorney's fees, and to imprison Mr. Cruz until he does so. *Id.* at 6. Mr. Cruz asserts that he did everything he could to prevent the default and it was Ms. Cruz's actions which led the loan to enter default. (Plaintiff's response to Defendant's OSC Mot. at 3).

The elements of civil contempt are: 1) a valid order; 2) a party's knowledge of that order; 3) the party has the ability to comply with the order; and, 4) the party willfully violated the order. *Rodriguez v.* Rodriguez, 2003 Guam 8 ¶ 15, overruled on other grounds by *Paguio v. Paguio*, 2014 Guam 36. The parties entered into, and the court approved, the Interlocutory Decree meaning that a valid order is in place, and Mr. Cruz had knowledge of that court order. (Interlocutory Decree at 4). The elements in dispute by the parties are whether Mr. Cruz possessed the ability to pay, and if he willfully violated the Interlocutory Decree by allowing the 2012 PFC Loan to become delinquent resulting in PFC's foreclosure on Ms. Cruz's property. Ms. Cruz argues that Mr. Cruz had the means to pay off the loan and simply refused to do so. (Ms. Cruz's OSC Mot. at 3). Mr. Cruz contends that it was not his, but Ms. Cruz's willful

refusal to participate in the loan refinancing process which lead to the inevitable foreclosure. (Plaintiff's response to Defendant's OSC Motion at 3).

Mr. Nathan Oledan, a loan officer from PFC, appeared before the Court to testify about the factual scenario surrounding the parties' 2012 PFC Loan and the eventual foreclosure upon Ms. Cruz's property. In May 2012 the parties executed a promissory note and mortgage for a loan in the amount of $99,350.00. (Court Recording at 10:58:00, Mar. 30, 2018); (Defendant's Ex. B.) (filed under seal). The Loan was to be paid in monthly installments of $1,180.11 which would mature on June 05, 2017. *Id.* When the loan reached its maturity, the entirety of the loan would become due in the forms of a balloon payment. (Court Recording at 11:01:10, Mar. 30, 2018). This loan was secured by Lot 3245-NEW-REM-1-5, Chalan Pago; Ms. Cruz's separate property per the terms of the Interlocutory Decree. (Court Recording at 11:02:00, Mar. 30, 2018).

On June 05, 2017 the loan matured and became due in full, and Mr. Cruz, unable to pay the debt off in full, sought a loan revision to extend the term of the loan for three months while he and Ms. Cruz prepared to refinance the loan. *Id.* at 11:57:10. Mr. Cruz paid the revision fee and executed the loan revision. *Id.* However, Ms. Cruz was required to approve and give force to the revision by signing off on the document; PFC informed Ms. Cruz of this fact several times from June 2017 to September 2017. *Id.* at 11:44:00, 11:47:00-49:30, 11:50:00, 11:52:00. Each time, Ms. Cruz stated that she did not understand why she had to sign anything, but never sought clarification, refused to speak with another loan officer to help clarify the situation when it was offered, and never went down to PFC to inquire about the revision or sign the document. (Court Recording at 11:52:00, Mar. 30, 2018); (Defendant's Ex. B). Ms. Cruz later stated that she had previously refinanced at least two other loans with Mr. Cruz during their marriage.

(Court Recording at 10:50:52, Nov. 13, 2018). Mr. Cruz continued to make payments on the loan until October 2017, when PFC notified him that the loan revision had never been executed by Ms. Cruz and that PFC would only accept full payment of the loan. (Court Recording at 12:27:00-12:29:00, Mar. 30, 2018).

Mr. Cruz also sought to refinance the loan in his name. *Id.* at 11:10:00. Mr. Cruz was approved for a new loan to pay off the 2012 PFC Loan for approximately $103,000.00; however, PFC required that the new loan be secured by the same property that secured the 2012 loan—Ms. Cruz's property. *Id.* at 11:10:00, 12:01:00. Ms. Cruz was also informed of this new loan, and informed that she would be required to execute a mortgage securing her property to the new loan. *Id.* Much like the loan revision, Ms. Cruz would not sign off on the refinancing, or provide PFC with any documentation to process the loan, even after being warned that foreclosure would not cease until the loan was refinanced. *Id.* at 12:01:00-02:10:00. Ultimately, no refinancing occurred, Mr. Cruz was unable to pay the balloon payment, and PFC foreclosed upon the property and sold it in February 2018 for $97,000.00. *Id.* at 11:03:40; (Defendant's Ex. B) (PFC acknowledging that Mr. Cruz did not possess the funds to pay the entire balance in full).

It appears to this Court that Mr. Cruz was not in willful violation of the Interlocutory Decree. Under the Decree, Mr. Cruz agreed to assume the PFC loan debt—secured by Ms. Cruz's property—and make monthly payments on that debt. (Interlocutory Decree at 3) (Section II(A)(2)). Ms. Cruz would have this Court read that provision as requiring Mr. Cruz to simply pay of the entirety of the $100,000.00 debt should the entire amount come due; the Court declines to do so. The plain language of the subsection states that Mr. Cruz will make minimum monthly payments on the loan of at least $1,180.00, and that the loan is secured by Ms. Cruz's

property. *Id.* Both parties were well aware that the loan would need to be refinanced or paid off in June 2017 and, had Ms. Cruz desired to prevent Mr. Cruz from refinancing the loan with her property as collateral, the parties could have included and agreed to such a provision. (Court Recording at 10:58:00, Mar. 30, 2018). The absence of those terms is logical given that it would be unreasonable for Mr. Cruz to assume such a punishing obligation, and it would pose a great risk to Ms. Cruz's property if Mr. Cruz was unable to come up with the money to pay off the entirety of the debt. Accordingly, the Court holds that subsection II(A)(2) of the Interlocutory Decree required Mr. Cruz to make minimum monthly payments on the 2012 PFC Loan and assume other associated costs, such as refinancing fees, and that Ms. Cruz agreed to permit her property to serve as collateral on that loan so that Mr. Cruz could continue making reasonable monthly payments on the balance.

Mr. Cruz did everything in his power to stop the loan from becoming past due, and to prevent Ms. Cruz's property from going into foreclosure. He attempted to procure a loan revision, and paid the fees for it, to extend the loan and give the parties time to refinance. Mr. Cruz continued to make payments on the loan during what he though was the extension period. He diligently sought refinancing for the loan, but was unable to secure a loan that did not require Ms. Cruz's property to serve as collateral.

In contrast, Ms. Cruz chose to do nothing in this matter. PFC informed Ms. Cruz numerous times about the revision and refinancing, and explained to her the consequences of failing to come in and sign off on the loan revision or the refinancing paperwork. Ms. Cruz was well aware that if she did not sign the revision or refinancing documentation, PFC would continue moving forward with the foreclosure. Both parties were required to execute the revision and refinancing agreements, and Mr. Cruz had already done his part. Despite having

already been through the refinancing process twice before, Ms. Cruz claims that her inaction stemmed from confusion surrounding the process. However, even though she was allegedly confused, Ms. Cruz never contacted or met with PFC to discuss situation, or seek further clarification. By her inaction, she allowed the loan to become over four months delinquent, and as a result, PFC foreclosed on her property. Ms. Cruz's assumption that Mr. Cruz would simply pay the entirety of the loan off at once was unreasonable, and we decline to punish him for is inability to make such a payment, or for his inability to get Ms. Cruz to sign the refinancing documentation. Ms. Cruz had the ability to stop the foreclosure on her property, but chose to do nothing.

Therefore, Mr. Cruz did not willfully violate the Interlocutory Decree, and the Court, accordingly, denies Ms. Cruz's Motion for Order to Show Cause & Contempt and Motion to Enforce Decree.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Ms. Cruz's Motion for Order to Show Cause & Contempt and Motion to Enforce Decree, and **DISMISSES** Ms. Cruz's Motions for Writ of Execution and Judgment Debtor Examination and Mr. Cruz's Second Motion for Order to Show Cause & Contempt as moot.

**IT IS SO ORDERED** on this 11th day of February, 2019.



SERVICE VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the copy box of:

Avriola
J. MAHER
Date: 2/11/19 Time: 3:30 m
Manu PM
Deputy Clerk, Superior Court of Guam

**HONORABLE ALBERTO C. LAMORENA III**
**Presiding Judge, Superior Court of Guam**